Good afternoon, Illinois Appellate Court. First District Court is now in session. The First Division, the Honorable Justice Michael Hyman presiding. Case number 1-9-2-5-5-0, Michael Janovich versus Indiana Harbor Belt Railroad Company. Good afternoon. Sorry for the slight delay. The case before you went a little long. With us is Justice Pierce and Justice Coghlan. If you would please first introduce the lawyers who are going to be addressing us. First with the appellant. Yes, good afternoon, your honors. This is Andrew Tauber on behalf of Indiana Harbor Belt Railroad, the appellant. Good afternoon, your honors. Mike Rasek on behalf of the Plaintiff's Appellate, Mike Jovanovich. All right. Thank you. Uh, for the appellant, uh, Mr. Tauber, how much time do you wish to, uh, you haven't? How much time do you want to say for rebuttal? Oh, you know, I suspect 10 minutes is sufficient for the opening, your honor. I'm guessing and say four minutes for rebuttal. After that, I think it's pretty well briefed, and I don't think there are too many issues out standing. Okay. I'm a project. What? How much time? Um, I would say about the same amount of time that Mr. Tauber suggested. 10 to 12 minutes is probably what I need. Okay, we will, uh, may ask a lot of questions, and we don't really watch the clock is you. That's one of the reasons we're a little late, uh, today. Uh, the one thing we do is in this, uh, zoom court. What we will do is interrupt. And when we do so, please finish your statement. Whatever you're saying. We're not trying to stop you in mid sentence, but try to get your attention. We once tried to just show our hands, but nobody was looking at us. So we'll interrupt and then you answer our questions and go back to whatever you want to address. Uh, any questions? If not, Tabor. Thank you, Your Honor. Good afternoon. Um, I'm, of course, happy to answer any questions that the court might have today, but I intend to focus on the specific personal jurisdiction issue, um, to establish specific personal jurisdiction over IHB in Illinois. Mr. Jovanovich must show that his claim arises out of or relates to purported acts or emissions by IHB in Illinois. On appeal, Mr. Jovanovich relies solely on the fact that the engineer driving the locomotive, Mr. Williams, was supposedly trained in Illinois. But Mr. Jovanovich has failed to carry his burden of showing that Mr. Williams was, in fact, trained in Illinois. In fact, to the contrary, the admissible evidence establishes that Mr. Williams was not trained in Illinois, was instead trained in Indiana. I would point the court to the Bryan supplemental affidavit, which can be found in the appendix at page 440. Um, specifically point the court to the Bryan supplemental affidavit, as well as the documentary evidence submitted in conjunction with that affidavit, which is found, um, exhibit two at page A443. And that, if we agree, uh, we disagree with the trial court, uh, who did not, uh, grant the motion to, to strike the affidavit. But if we strike the affidavit, because of the lack of, uh, knowledge on the part of the affiant, uh, with regard to that issue, that, that particular statement, is there anything left that they could hang their head on, in your opinion? No, Your Honor. Uh, you know, obviously there are two different types of personal jurisdiction that a plaintiff might assert. It could be general personal jurisdiction or specific personal jurisdiction. Specific. We're talking specific. Okay. Referring specifically to specific. No, Your Honor, because at the trial court, plaintiff had, uh, advanced three theories as to why there purportedly was specific personal jurisdiction here. One, uh, was the notion that Mr. Williams was trained in Illinois. The second was the notion that rail cars switched at the Savage site come from and go to Illinois. And the third was purported radio interference from Illinois. As to that last theory, plaintiff has explicitly disavowed any reliance on that, on this appeal at direct the court's attention to Apkalee's brief at page 29, note three. As for the, um, notion that specific personal jurisdiction is somehow conferred by the purported fact that rail cars switched at the Savage site in Amad, Indiana, go to and from Illinois, a fact which is not actually established, but nonetheless, it's legally irrelevant. And on, in, uh, Apkalee's responsive brief, Apkalee essentially disavowed that theory too, describing it as merely a supporting role at point to Apkalee's brief at page 27. So really the only theory left that plaintiff has advanced as to why there is specific personal jurisdiction over IHB in Illinois is the theory that Mr. Williams, the engineer, was trained in Illinois and that somehow his, um, training was negligent that contributed to the accident. And therefore, so if this court agrees with us that there is no admissible evidence to suggest that Mr. Williams was trained in Illinois, and that in fact, the evidence shows the contrary, then I think this is at an end and the case should be dismissed. But if we, we do not agree, if we do agree with the trial court, uh, how would, uh, Rios versus Bayer corporation, uh, play in this situation? Sorry, can you give me a little more help there, your honor? Oh, excuse me. If we, if, if we did not, if we agree with the trial court, so the affidavit stands. Okay. So you have that, that, that fact does Rios versus Bayer corporation have any thing to tell us? Your honor, I apologize. It wasn't clear. I was looking for help on the citation. What's the principle here? Oh, the Rios? Blanking on the case at the moment. It's the Illinois Supreme court case, uh, following up on Briscoe Myers. Uh, it came out, uh, well, I know they cited it. I believe you cited it too. Yeah. I apologize for honor. It's kind of slipping my mind right now. It's embarrassing, but you know, I think even if this court accepts the affidavit, the affidavit on its face simply is not sufficient to establish what Mr. Jovanovich must establish. He must establish that Mr. Williams is trained in Illinois. So if we accept the affidavit as in evidence, we can look at it in particular, and it simply does not support the assertions. This is from the appendix at page 127, where there are two paragraphs in the affidavit that speak to the issue. Paragraphs nine and 10. The first one states that all IHB employees received their rules training at the Blue Island yard in Riverdale, Illinois. And now on appeal, plaintiff has conceded that in fact, Mr. Williams was initially trained in, uh, Indiana where he received his rules training as a document show. So that then leaves the second assertion, which is that specifically the IHB yard in Blue Island has the only simulator, which according to Mr. Jovanovich is required for training engineers like Mr. Williams. So he's not saying that he has any personal knowledge of where Mr. Williams in particular was trained. Rather, he's saying as a general matter, all IHB engineers must be trained in Illinois because that's where the only IHB simulator is. However, the conclusion doesn't follow from the premise, because as we point out in our briefing, the Federal Railroad Administration regulations, which govern the training of engineers and which Mr. Jovanovich relied on as the basis for his purported assertion, clearly states that an engineer may be tested either on a simulator or in the locomotive of an actual train. So there's simply no basis to, no basis to infer from the general statement that the simulator is located in Illinois, that Mr. Williams was trained on that simulator. He wasn't. So even accepting the affidavit as admissible evidence, which we suggest it's not, it still does not get Mr. Jovanovich over the line where he needs to be. Anything to add? Not on that point, Your Honor, no. I mean, I would briefly touch on the general jurisdiction point, if there are no questions as to specific jurisdiction beyond that, which is that Mr. Jovanovich on appeal argues that Daimler, although it holds that the states of incorporation of principal place of business are the paradigmatic places in which general jurisdiction can be obtained. Mr. Jovanovich argues it's not the only place, which is certainly true, exceptional circumstances such as in Perkins would be recognized, but then says that under Daimler, there's a proportionality test and that this court should somehow weigh the proportion of IHB's operations. Well, certain portions of IHB's operations, according to Mr. Jovanovich, against the totality of its operations, but that's simply not the test. Daimler is utterly clear, Illinois Supreme Court and Asked Insurance was utterly clear that for general personal jurisdiction to be obtained over a corporation outside of its place of incorporation or its principal place of business, which is agreed upon here in Indiana, there must be exceptional circumstances such as those in Perkins and specifically the other place has to be a quote surrogate for either the place of incorporation or the principal place of business. That simply does not obtain here. And as much as Mr. Jovanovich wishes this court to think there's some proportionality test where one weighs whatever metrics Mr. Jovanovich believes is relevant. The fact is he has been unable to identify and we have been unable to locate a single case in any jurisdiction anywhere in the country following Daimler in which a corporation has been held subject to general personal jurisdiction. A state outside its state of incorporation or principal place of business. And we certainly urge this court not to take that extraordinary leap into the unprecedented. Mr. Tauber, I take it that your opinion would not change based on the additional authority cited by opposing counsel. The Baran case. Actually, Your Honor, we're the ones who brought that to the court's attention. No, we believe that that reaffirms our position. I'm sorry, Your Honor, I missed you. I misspoke. I guess I'm asking you, how does Baran play into your argument? You know, I don't want to suggest that it plays majorly. I don't know if it really helps you. Well, it helps us in this regard, Your Honor. In the very narrow sense that it reiterates what the United States Supreme Court said in Daimler with the Illinois Supreme Court said in Aston, namely that for general personal jurisdiction to obtain outside the state of incorporation or the state where the principal place of business is located. Then it must be, quote unquote, a surrogate place. So it's not merely the proportion that we go into this in our briefing. It's not merely a proportion of activities outside the state. But the Supreme Court in Daimler specifically said, perhaps I can find the quote here, that. It's, I apologize. It's, oh, yes, here it is. This is from Daimler at 571 U.S. at 139, note 19. It says, and this is, you know, contrary to what plaintiff argues, when determining whether a situation is exceptional, the question is not whether the corporation's operations in the forum state constitute a substantial portion of its overall operations, but rather whether, and this is now where this quote starts, the corporation's operations in the forum state are, quote, of such a nature as to render the corporation at home in that state. So, again, it's talking about the qualitative nature of the corporation's activities, not the quantitative mass. So you're looking for a surrogate. In other words, something that would be like a principal place of business, such as in Perkins, when the president and CEO of the company was displaced from the Philippines to Ohio during World War II. That's the sole example. That does not exist in this case. Correct, Your Honor. Thank you. If there's no other questions, then thank you. Thank you, Your Honor. Thank you, Your Honor. I'm Michael Rasek on behalf of the plaintiff's athlete, Mike Devonovich. If I can just start where the last part of the argument ended, obviously the point where we critically disagree with the railroad is what Daimler means. And our point is that, in the opinion, they clarified that there are three kinds of jurisdiction, three places of jurisdiction, where you're incorporated for a corporation, where you're incorporated, where you do your principal place of business, and some exceptional but existing other place where you are at home. And they said, in their footnote 20, that general jurisdiction calls for an appraisal of corporate activities nationwide and worldwide. And Justice Sotomayor, very clearly in her concurring opinion, explained that that was a proportionality test. And that's the same test that the U.S. Supreme Court applied in the Turell case, the Montana railroad accident case. Putting that aside, putting that aside. Yes, sir. To me, what was absent from your brief, surprisingly, was Aspen American Insurance Company versus Interstate Warehousing, Illinois Supreme Court case from 2017, where Illinois adopts Daimler. Now, let's talk about that case rather than Daimler. We have to follow the Illinois Supreme Court as well as the U.S. Supreme Court, but we have a more recent decision from the Illinois Supreme Court. What has the Illinois Supreme Court said about your argument on footnote 20? First, I'm not sure I would agree that the Illinois law is the controlling law when we're looking at general jurisdiction. I think we're pretty much looking at federal court laws as the controlling law, unless Illinois law differs. Well, if it doesn't differ, then we should look at the Illinois law. I mean, to ignore, your brief does not even cite the case. To not even cite an Illinois case on the exact issue before us tells me something. I'm just wondering, we're not supposed to follow Illinois law? You're not supposed to cite Illinois Supreme Court law? The Illinois Supreme Court said about exceptional case, and they talk about that and follow Daimler. You're right, they do follow Daimler in total. Yes, sir. They don't talk about footnote 20. We're talking about exceptional, okay? Tell me how, if it's even true that Williams was in Illinois for his training, how does that make it exceptional? How is that even near Perkins? Maybe we're not on the same path. Mr. Williams' training in Illinois is relevant to the specific jurisdiction argument. The railroad's presence in Illinois is what we're arguing for in terms of- You're right, you're right. His presence in Illinois, how does that dovetail with Perkins? Because in Perkins, you have the operation of what was going on in the Philippines in Ohio. And the court went way back to a case, what I think is from the early 1950s, in order to cite that. And here, there's so many areas. I'm not even sure where you got your information. I saw you cited Wikipedia. Are we supposed to rely on Wikipedia? Yes? I have cited it, but no. We shouldn't rely on Wikipedia. How about, you also cited Doug's Railroad Place several times. Now, why would we want to rely on Doug's Railroad Place, which has a subsection of another website called Indiana Harbor Belt Railroad Archives. And in that, it even says that that was developed by some guy named Lightning some time ago. So, I mean, why are we even looking at these things? I'm trying to find out your information. How can we rely on that? What the court can rely on. That information was put in there as background information. What we're relying upon, and what is before the court, is the page from the website for the railroad. The information, the primary information in this case about where the railroad operates is on that one page in the website. So why is that important? Where the railroad operates, that is one part of it. But their home office. Yes, sir. And they're incorporated in Indiana. That is where things are happening. You're trying to say that what's so, just because they operate in Illinois. Daimler Chrysler, they operated in California. Daimler Chrysler definitely operated in California. And that was the distinction between the cases. Chrysler's, I'm sorry, Daimler's subsidiary operated in California. And ironically, in that case, the corporation there did not contest that although the subsidiary in California had its principal place of business in New Jersey and was incorporated in Delaware. They still said that, they still accepted general jurisdiction over the subsidiary in California. Even though, like in this case, its principal place of business and its place of incorporation were elsewhere. But what the court continued to do in that case, they talked about, the quote I used, an appraisal of corporate activities nationwide and worldwide. And then at Terrell, that's exactly what they did. Let's talk about Aspen. That's not a case of subsidiary. No, it's not. The Illinois Supreme Court has made it pretty clear that we should be following Daimler. That situation has nothing to do with that. Whether it's nationwide or operates far afield, this case is actually easier because it only operates in two states. And so the fact that they have operations in Illinois, as Daimler tells us, that's not exceptional. Of course it's not. But the fact that they have the majority of their operation in Illinois. We don't know that, do we? Yes, we do. How do we know that? Because that is what is on the page from their website where they describe their operation. But it doesn't say that they have a majority of their operation. They have a couple facts there. And I don't know what those facts actually mean. I don't know what other things they do. Are you going to talk about the amount of money they make in Illinois? The amount of tracks they have in Illinois? The number of employees that go to Illinois? Their expenses in Illinois? I mean, I don't know what your... What are the... How is that a test that we can use in the future? What that page shows is that the tracks are in Illinois. It describes where the railroad is in Illinois. Its major yard is in Illinois. Its other three yards are in Illinois. And the railroad in this case did not decide to put in any contrary evidence. The only evidence that this court has about the contacts in Illinois are what are on that page. If they, in fact, had information relative to what your Honor is saying, then that's what they should have brought forward. And that would have brought us to a discovery stage. Well, it's not necessary. You didn't do any discoveries. I understand it. I did. Some discovery. But the fact is that the only way you win, if we read footnote 20, they're making a big decision. The U.S. Supreme Court is making a humongous decision in footnote 20. That's what your argument is, which is hard to believe because there aren't too many footnotes in the history of the Supreme Court that are so important. There's one I can think of. But other than that one footnote that we all taught in law school, there is not another footnote. And there was just a disagreement with Justice Sotomayor, as I understand it, as to why that footnote is there. So for them to make an exception that kind of eliminates the rule that they just cited, I'm trying to follow that. I guess my answer, my question would be, why does that footnote eliminate the rule they just cited? They said there can't be an exceptional circumstance. Sotomayor and her concurrence said, you're talking about a proportionality test, and that's too complicated. We should not use a proportionality test. And the Supreme Court majority in that footnote is answering her argument and saying, that's what we mean. We mean to compare the activities in the states. It says an appraisal of your activities nationwide and worldwide. The only appraisal that this court has before is what's on that website page, which shows that a majority of its track, a majority of its track is this year and has a new process this year. In their brief, they do not specifically say, we do not deny that a majority of that is a known fact. And when you've got that, you fall right into the Terrell case, the railroad case, the Montana case. The reason that the plaintiff lost there was because although there was a substantial footprint in Montana or Wyoming, the overall footprint of the corporation across the country was different. If the facts had been like this, the plaintiff would have won there. The same in the Vermont case, Bertolino, that they cited as a district court case, but the court did the proportionality test that Sotomayor said, that's what Daimler is all about, proportionality. And the plaintiff lost in that case because about 1% was in Vermont and the other 99% were in the other state. Respectfully, that's where we believe that Daimler, its principles apply here specifically. The point that we began with is the specific jurisdiction over the railroad because of the context, primarily because of the context of the railroad with Illinois by virtue of the training on the simulator, which Mr. Jovanovich said occurs in Illinois. We're not necessarily saying it occurs in Illinois because federal law requires it. His affidavit just said everybody who is trained is trained on the simulator and the simulator is in Illinois. They don't deny the simulators in Illinois. And the reason that can be more important than would normally be the case is because you have an FDLA case so that any negligence, no matter how small, can contribute to the viability of the defendant. We have evidence, they have evidence that he was trained in Indiana. Nothing indicated any training in Illinois. And as you just conceded, the federal law does not require training on a simulator. So we don't know one way or the other. So how can that be a basis? Because the affidavit of Mr. Jovanovich says they're all trained on the simulator and the simulator is Illinois. From that it follows that Mr. Williams must have been trained on the simulator. It doesn't follow. We don't know, do we? You're assuming, but that's not a fact. He doesn't know. How does he know? That's a separate question then. If it's a question of how he knows, he's been an employee of that railroad for a long time. From what you can read, it's common knowledge that it's here. And we know it's here. They admit that the simulator is here. That's not an issue in this case. The fact that he says that all engineers are trained on it mirrors the testimony in the engineer's hearing where twice they said the fact that you're not an engineer doesn't mean you can't know what engineers do. You might not know all the details, but you know the rules of governor training. Mr. Ratzak, do I assume from that argument that you think common knowledge is sufficient to comply with Supreme Court Rule 191? It could be in the right circumstance. In some cases it could not. If it was a detailed situation, you might well need more detailed information. Are you conceding that he didn't have any personal knowledge? Before I answer, the affidavit does not describe how he knew that. I can't say he did not have personal knowledge. It doesn't say I had personal knowledge. But it is an affidavit and an affidavit presumably is meant to have his personal knowledge. That just levers another small point in. I think that's a huge problem. The personal knowledge? Yes. If the affidavit is not deemed sufficient by this court, then we would ask, as we did in the brief, that it be remanded so that if we're going to lose on the affidavit, we have the opportunity to change it. Obviously in that situation, the trial court accepted the affidavit. There was no need for us to ask the court for leave to add more information to it. If somebody said something is short and it's not short, why would I add to it? If in fact it is short, then I can add to it. That would be my position. Justice Hyman disappeared from my screen. He disappeared from my screen as well. I have aggravated courts, but never to that extent before. I'm sure we can locate him momentarily. I just sent them a new link, Justices. Okay. Thank you, Darren. Here we go. I froze out about... Everybody froze. You're all like monuments. For the last four minutes, I apologize. Well, we just all agreed that we'd ignore your questions. Seeing that you left us. I guess now we have to reconsider. You're all looking. Nobody was talking. I apologize. You want to summarize what you said? We stopped as soon as we realized that you weren't with us. Was I frozen too? You were gone. I wasn't hearing anything. Justice Coghlan was asking about personal knowledge. My point, and I don't know if Your Honor heard this part, my point was that in the trial court, we had no reason to ask the trial court to add more information to our affidavit because the trial court accepted our affidavit. If this court will not accept our affidavit because it doesn't say I have personal knowledge and how I have personal knowledge, and if it will not accept the concept that somebody working for a business knows such basic information as who trains where, then we would ask it to be remanded so we can amend that affidavit. As to the general jurisdiction argument, the railroad agreed in its brief that the majority of its trackage is here. It doesn't quarrel with the statements that we pulled from its website. Those statements show that most of the railroad is here. We believe Daimler and the Illinois cases on Daimler mean the same thing. How is that exceptional? I'm sorry, Your Honor? How is that exceptional? It's exceptional in the sense that Daimler said it was exceptional. Daimler didn't say it was exceptional. They have railroad tracks in Illinois. It has nothing to say about that. What is it that makes that so exceptional? I'm sorry. Time just froze again. All right. There you go. Did you hear me? No, I did. It's exceptional in the sense that the Supreme Court meant to be exceptional. They meant that the corporation is subject to general jurisdiction when it's at home. It said it's at home, and everybody at Daimler seems to agree. It's at home when you appraise its activities and see where it has its activities. The railroad is here in Illinois. It happens to have those two elements in Indiana. I think that's the classical home exception that the Supreme Court was talking about, and it's really what they applied to Terrell, and it's really what the District Court looked at in the Vermont case. Wasn't it a test that the defendant has continuous and systematic general business contacts with the state? That's the basic test, and yes, that's fulfilled here. They've got the railroad here, and they've got their yard here. That's where they do their switching. Their site admits that, but their Blue Island yard is the main yard. It's enormous. Nobody disagrees. Anything further? I do not. Thank you, Your Honor. I appreciate the opportunity. I apologize for the video. Mr. Taber? Yes. Thank you, Your Honor. Let's see if I can freeze you out twice as Mr. Ravsak did. Let me start  jurisdiction points that received relatively little attention in Mr. Ravsak's argument, but I do want to touch on one point. Unfortunately, Mr. Ravsak mischaracterized Mr. Jovanovich's affidavit. Mr. Jovanovich does not say that all people are trained on a simulator. It simply doesn't say that. The affidavit says that the IHV yard in Blue Island has the only simulator, and I'm quoting, that was already a quote, which is required for training engineers like Ken Williams. Contrary to Mr. Ravsak's statement, Mr. Jovanovich's affidavit does directly depend on the purported requirements of federal law. He wishes this court to draw the inference that Mr. Williams was trained on the simulator in Illinois because it is purportedly required for training engineers like Ken Williams. That's at A-127 of the appendix. But as we pointed out in our briefs, and we've shown this court through the FRA regulations, that's simply not true. So there's no basis in the affidavit for concluding that Mr. Williams was trained in Illinois. Now, as to the general jurisdiction points that plaintiff focused on here, he again points to the footnote that Your Honor was discussing with him about the comparison to worldwide and nationwide activities, but nothing in that suggests that that is a quantitative comparison. Rather, as the full quote that I read earlier suggested, it's a qualitative comparison because the court is looking at the worldwide activity, not the amount of the activity, the nature of the activity. It's simply not exceptional for a corporation to have a majority of some assets in one state while being incorporated and headquartered in another. Now, Mr. Rassak places great emphasis on the fact that the majority of our tracks are in Illinois, which they are, and indeed we do not dispute that. But why are railroad tracks the proper metric for judging general personal jurisdiction? Why not revenue, profit, numbers of customers, on and on. There's just an infinite number of metrics that could conceivably be used. Mr. Rassak cherry-picks a few because he thinks that they're convenient in this case, but there's absolutely no principle behind that cherry-picking, and it runs directly contrary to what the Supreme Court was attempting to accomplish in Daimler, which was to define clearly, without dispute, with respect to any particular corporation where it is subject to general personal jurisdiction. Therefore, it selected these two paradigmatic states because they're easily discernible without dispute. Namely, where is it incorporated in? Where is its principal place of business or its headquarters? And here, those are both in Indiana. And if we were to adopt this proportionality test that plaintiff is urging here, and note that the word proportionality never appears in the majority opinion. It's solely in Justice Sotomayor's concurrence, which is almost a dissent, so I would not read the majority rule from her opinion. But, the uncertainty is exactly contrary to what the Supreme Court was doing, and that would follow from this. And again, I'll close with the observation that, despite plaintiff's insistence that Daimler established a proportionality test, and that we here fail that test, plaintiff has yet to cite to this court a single case, not one case from any jurisdiction in the country following Daimler, in which a court held that a corporation was subject to general personal jurisdiction outside the states in which it was incorporated or had a personal place of business. Oh, I'm sorry, Your Honor, I said I was closing, but I realized there was one note I do want to touch on at the very end, which was the possibility of a remand. Plaintiff has asked for a remand if this court finds the affidavit insufficient, which it plainly is. But that's not a cause for remand. Plaintiff knew about Rule 191A long before, and certainly his counsel knew about the rule before this litigation began. He could certainly have prepared his affidavit in compliance with that rule. He chose not to. It had nothing to do with our challenging it. It's simply insufficient on its face. And there's no reason why we should be put to further litigation in the trial court when plaintiff failed to carry his burden initially. Thank you, Your Honor. Thank you. I want to thank both of you. Excellent arguments. Again, I'm sorry my Zoom flickered. But the briefs were well done, well written, which I would expect from the counsel involved in this case. And we'll take the case under advisement and rule subsequently. So thank you very much.